## ESPY *vs.* JONES.

[ACTION FOR BREACH OF PROMISE TO MARRY.]

1. *Admissibility of seduction in aggravation of damages.*—If evidence of seduction can be received, in any case, to aggravate the damages in an action for a breach of promise to marry, it is only where the seduction follows the promise, and is effected by means of it : seduction prior to the promise is not admissible evidence.

2. *Charge misleading jury.*—A charge which predicates the plaintiff's right to recover on the proof of a promise and breach thereof, and entirely disregards the evidence adduced by the defendant tending to show a justification of the breach, is erroneous.

3. *Assent of parties to contract.*—It is essential to the validity of a contract to marry, that there should be reciprocal promises between the parties ; but, if a man makes an express offer or promise of marriage to a woman, her acceptance and reciprocal promise may be established by proof of her conduct and actions at the time, as well as by express words.

4. *Justification of breach of promise to marry.*—If a man promises to marry a woman whom he believes to be virtuous and modest, and afterwards discovers that she is loose and immodest, he is justified in breaking his promise; but, to entitle him to a verdict on that ground, the jury must be satisfied that the plaintiff is a loose and immodest woman, that the defendant broke his promise on that account, and that he did not know her character at the time he made the promise.

5. *Admissibility of plaintiff's want of chastity in mitigation of damages.*—Acts of fornication, committed by the plaintiff prior to the defendant's promise to marry her, and in which the defendant himself participated, are not admissible evidence for him in mitigation of the damages.

APPEAL from the Circuit Court of Marengo.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Maria F. Jones, against David Espy, to recover damages for a breach of promise of marriage. The defendant pleaded the general issue, "in short by consent, with leave to give any special matter in evidence." On the trial, as the bill of exceptions states, one of the plaintiff's sisters, who was examined as a witness on her behalf, testified, " that she heard defendant, in 1853, ask plaintiff's mother for her, and that, in 1854,

plaintiff prepared her dress to marry defendant;" and this witness and another sister both testified, that on the 5th March, 1856, in their presence, defendant promised to marry plaintiff in ten days, in order to induce her to sign a paper, which he had prepared, instructing the circuit clerk to dismiss certain proceedings under the bastardy act; which she had instituted against him; that he repeated the promise after the plaintiff had signed the paper; that the plaintiff several times prepared her clothes, in anticipation of the marriage, and that the defendant always failed to come. It appeared that the plaintiff had given birth to an illegitimate child, on or about the 1st March, 1854, and had instituted proceedings under the bastardy act against the defendant as its putative father; and the circuit court allowed the plaintiff, against the defendant's objection, to read the record of these proceedings as evidence to the jury; but afterwards instructed the jury, "that they were not to consider the record and papers in the bastardy case as evidence to prove the promise of marriage, or any issue in the cause." The circuit court also allowed the plaintiff, against the defendant's objection, "to introduce her child for the inspection of the jury, in order to prove, by its alleged resemblance to the defendant, that said child was begotten by him; but there was no other evidence before the jury, tending to prove that the defendant was the father of said child." The plaintiff adduced evidence, "tending to show that, until her acquaintance and association with the defendant, her character was good;" while the defendant's evidence tended to show, "that her character for chastity was bad, before and after the promise of marriage testified to by plaintiff's sisters, and before ever he became acquainted with her." The defendant read in evidence the deposition of Dr. Vaughn, a practicing physician, who testified, that he attended and prescribed for plaintiff, in 1849, when she was infected with a venereal disease : "and there was no evidence tending to show that defendant, before he made such alleged promise, had any knowledge or information of her condition as testified to by Dr. Vaughn, or that she

had any venereal disease." The defendant reserved several exceptions to the rulings of the court on the evidence, which the decision of this court renders it unnecessary to state at greater length.

The circuit court charged the jury, among other things:

"2. That if they should find, from the evidence, that the defendant had promised to marry the plaintiff, and that there had been a breach of that promise, and that this action was commenced within twelve months from said breach, then they must find for the plaintiff."

"3. That if they believed the testimony of the plaintiff's sisters," as to the defendant's conduct and declarations on the 5th March, 1856, "and that the plaintiff assented to the proposition then made by him, then there was a contract of marriage between the parties; and that if the defendant afterwards failed and refused to marry the plaintiff, this was a breach of said contract on his part."

The defendant excepted to these charges, and requested the court to instruct the jury—

"1. That if the defendant committed fornication with the plaintiff, and got a bastard child by her, and if she has been wronged in so doing, the law has provided proper remedies for such wrongs; but the jury can give no damages in this case on account of such acts, if they were committed before the 1st January, 1855, if the contract relied on was made on the 5th of March, 1856.

"2. That if the plaintiff committed fornication with the defendant, and had a bastard child by him, before the 1st January 1855, the jury may consider that fact in mitigation, but not in aggravation, of the damages arising from the breach of any promise subsequently made.

"3. That if they believed the plaintiff had committed fornication before the defendant's promise was made, and that fact was unknown to him when he made the promise, he had the right to refuse, on that account, to marry her; and, in such case, they must find for the defendant.

"4. That if they believed, from the evidence, that the plaintiff had a venereal disease before the defendant made

the promise, and that fact was then unknown to him, he had the right to refuse, on that account, to marry her; and, in such case, they must find for the defendant."

The court refused each of these charges, and the defendant excepted to their refusal; and he now assigns as error all the ruling of the court to which he reserved exceptions. ·..

LOMAX & PRINCE, and WM. M. BROOKS, for appellant.
I. W. GARROTT, contra.

R. W. WALKER, J.—It has been much questioned, whether, in an action to recover damages for the breach of a promise of marriage, damages for seduction may be recovered. It has been distinctly held in Kentucky and Pennsylvania, that in such action seduction cannot be given in evidence in aggravation of the damages.—*Weaver v. Bachert*, 2 Barr, 80 ; *Burks v. Shain*, 2 Bibb, 341 ; see, also, *Perkins v. Hersey*, 1 R. I. 493. On the other hand, the rule adopted in Massachusetts, New York, and several other States, is, that where seduction has been practiced under color of a promise of marriage, the jury may consider it to aggravate the damages in an action on the contract.—*Paul v. Frazier*, 3 Mass. 73 ; *Whalen v. Layman*, 2 Blackf. 194 ; *King v. Kersey*, 2 Carter, 402 ; *Tubbs v. Vankleek*, 12 Ill. 446 ; *Wells v. Padgett*, 8 Barb. 323 ; *Green v. Spencer*, 3 Miss. 318 ; *Conn v. Wilson*, 2 Overton, 233.

Mr. Parsons suggests, that damages for seduction should be excluded, where the plaintiff was in actual or constructive service, or lived in a State in which the statute law gave her an action for the seduction ; and not otherwise. ·1 Parsons Contr. 553.

But we need not consider this question in the present case. It is very clear that, if seduction can ever be allowed to aggravate the damages, where the action is for breach of promise of marriage, it is only in those cases where the seduction follows the promise, and is effected by means of it. We can conceive of no principle, upon which

a seduction before the promise of marriage, and which, therefore, could not have been a consequence of such promise, should be permitted to swell the damages in an action on the contract.—*Burks v. Shain*, 2 Bibb, 343 ; *Tubbs v. Vankleck*, 12 Ill. 447. The court erred, in refusing to give the first charge asked by the defendant.

[2.] The second charge given was erroneous. It affirms, in effect, that if there was a promise to marry, and breach of that promise by the defendant, the jury must find for the plaintiff, without regard to any testimony which had been introduced tending to justify the breach.

As the judgment must be reversed for the errors already pointed out, we need not go into a particular examination of the other questions presented by the record. It will be sufficient for the future conduct of the cause, if we lay down some general principles which govern actions of this sort.

[3.] It is essential to the validity of a contract to marry, that the promises should be reciprocal. But, if a man makes an express offer or promise of marriage to a woman, the acceptance thereof by the latter, and the promise made by her in return, may, so far as it is necessary to be proved, in order to enable her to sustain an action against the man for a breach of his engagement, be established through the medium of her conduct and actions at the time, as well as by express words. If a man offers to marry a woman, provided she will come from America to England, or any distant part, and marry him; and the woman forthwith undertakes the journey, and is ready and willing to marry at the place appointed, this is evidence of the acceptance of the offer, and of a reciprocal promise on her part, which will enable her to maintain an action for a breach of promise of marriage.—Addison Contr. 677 ; *Hutton v. Mansell*, 6 Mod. 172 ; *Daniel v. Bowles*, 2 C. & P. 553 ; *Wetmore v. Wells*, 1 Ohio, 26 ; *Wightman v. Coates*, 15 Mass. 1.

[4.] The general rule, as to what will justify the breach of a promise of marriage, cannot be better stated than in the words of Abbott, C. J., in *Irving v. Greenwood*, 1 C. &

P. 350. "If any man has been paying his addresses to one that he supposes to be a modest person, and afterwards discovers her to be a loose and immodest woman, he is justified in breaking any promise of marriage he may have made to her; but, to entitle a defendant to a verdict on that ground, the jury must be satisfied that the plaintiff was a loose and immodest woman, and that the defendant broke his promise on that account; and they must also be satisfied that the defendant did not know her character at the time of the promise; for, if a man knowingly promise to marry such a person, he is bound to do so." See, also, *Capeheart v. Carradine*, 4 Strob. 42, 46; *Leeds v. Cook*, 4 Esp. 256; *Palmer v. Andrews*, 7 Wend. 144; *Boynton v. Kellogg*, 3 Mass. 188; *Beach v. Merrick*, 1 Carr. & K. 463.

[5.] It is to be inferred from what is said in *Beach v. Merrick*, 1 Carr & K., *(supra.)* that although a previous act of fornication by the plaintiff, which was known to the defendant when he made the promise, will be no defense to the action, still it will go to lessen the damages.—See 1 Parsons Contr. 550, note *(d)*. But this proposition is denied in *Butler v. Eschleman* (18 Ill. 44), which decides, that facts of conduct or character of the plaintiff, known to the defendant at the time of the promise, can neither be set up in bar of the action, nor in mitigation of damages.

However the general rule may be on this subject, we are satisfied, that if the criminal misconduct of the plaintiff was not only known to the defendant when he made the promise, but had been encouraged and participated in by him, he will not be heard to urge such misconduct in mitigation of the damages. Accordingly, if the plaintiff committed fornication with the defendant, before the making of the promise, that fact cannot be set up in mitigation of the damages; for that would be to permit a man to take advantage of his own fault.—See *Butler v. Eschleman*, *supra*; *Boynton v. Kellogg*, 3 Mass. 189.

Judgment reversed, and cause remanded.