Smith vs. Braun.

---

### No. 9280.

#### MARGARET SMITH VS. HENRY J. BRAUN.

37   225
122   125

An action in damages for a breach of promise of marriage is maintainable under the laws of Louisiana; such a promise is a legal contract for the violation of which an action in damages will lie. The woman who sues for damages in such a case, cannot cumulate with her main action, a prayer for the recognition of the defendant as the father of the child, the birth of which resulted from the alleged seduction of the mother by the defendant, under the cover of the promise of marriage, or for alimony for the support of the child—such demands must be enforced in separate suits.

In a suit for damages by a woman for breach of promise, proof of her seduction is admissible to enhance or increase damages.

Prescription of one year, which applies to damages *ex delicto*, cannot apply to an action for breach of promise –as such damages would arise *ex contractu*.

Minority of the defendant cannot be considered as an element of defense if not pleaded *in limine*, and when suggested for the first time in the Supreme Court.

15

In the absence of any averment of justification of the breach of promise, and under the issue of a general denial, evidence to show the lewd and unchaste habits of the plaintiff is inadmissible. What is not alleged cannot be proved.

In such cases the verdict of the jury will not be disturbed on appeal, unless manifestly erroneous and glaringly unjust.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Aug. Bernau* for Plaintiff and Appellee.

*Braughn, Buck & Dinkelspiel* for Defendant and Appellant.

The opinion of the Court was delivered by

Poché, J. Plaintiff claims damages in the sum of $5000 for a breach of promise of marriage, followed by seduction, resulting in the birth of a child. She has cumulated with her main action a prayer for the recognition of the defendant as the father of her child, and for alimony for its support.

The case was tried by a jury who found in favor of plaintiff in the sum of $1500, and defendant appeals.

The defense consists of numerous exceptions followed by a general denial.

We shall now proceed to consider the questions of law presented in the exceptions and in several bills of exception taken by both parties during the progress of the trial.

1. The first exception questions the right of plaintiff to cumulate with her main action the demands for recognition of the paternity of her child and for alimony.

That exception was maintained, and plaintiff was ordered to elect. In compliance, plaintiff elected to press her claim for damages for breach of promise of marriage.

Having reserved her exception to the ruling of the district judge, she has filed in this court a motion for an amendment of the judgment appealed from, with a view to correct the ruling of the judge on this point, and to recover judgment on her demand for alimony.

We think that the judge ruled correctly in refusing the cumulation of the two causes of action.

While it is true that our code recognizes the obligation of fathers and mothers to provide for the support of their illegitimate offspring, it is clear to our minds, that under a correct exposition of its provisions on this subject, the mother of such a child cannot cumulate a demand for alimony with an action for damages for a breach of promise of mar-

riage, and for seduction which resulted in the birth of the illegitimate child.

The real meaning of the code is that this alimony must be claimed for and in the name of the child—and the code also specifically directs and requires that such demand must be preceded by a legal acknowledgment of the child by the party from whom alimony is claimed or by a judgment declaring the child to be the offspring of such party. C. C. 242.

Under these plain provisions, it is safe to conclude that the demand for alimony could not be legally engrafted to the main action disclosed in plaintiff's petition.

The right of plaintiff to bring these two actions for recognition of her child and for alimony for its support, will therefore not be affected or impaired by the final judgment which we shall render in the present controversy, which is thus restricted to the question of damages for breach of promise and seduction.

2. Defendant excepted to the vagueness of the petition in its allegations of breach of promise—and he seeks a reversal of the judge's dismissal of that part of his defense. He complains particularly of the want of a special averment of the date at which the alleged promise of marriage was made or was entered into. We have carefully considered the petition in this connection, and while it must be conceded that it might easily have been characterized by more clearness of composition and greater precision, we find that it is sufficiently clear to inform the defendant of the real cause of action to which he was called to answer, and that it thus conforms to the requirements of the rules of pleading. Time is not of the essence of the promise of marriage, and the allegation that the seduction occurred on or about the month of July, 1882, and that it was effected in connection with the defendant's promise to marry the plaintiff, is in our opinion sufficiently pointed as to the time of the alleged promise.

We therefore sustain the judge's ruling on this point.

3. The defendant also relies on his peremptory exception of no cause of action.

A promise of marriage may be the foundation of a long life of usefulness and happiness; and the breach thereof may entail disgrace and long sufferings caused by bitter and unrelenting disappointment; it is therefore wise and logical that the party who causes such effects should be held legally responsible therefor.

But we are not left alone to reasoning and logical deductions in order to reach a legal conclusion on this point. Our code, Art. 1928, specially recognizes a promise of marriage as one of the contracts for the violation of which an action in damages will lie. And that provision of our law has received judicial interpretation and was enforced as a legal cause of action in the case of Morgan vs. Yarborough, 5 Ann. 317. While we hope with our predecessors in that case, that suits of that nature will not be of frequent occurrence in our courts, we must hold as they did, that such a complaint presents a very serious cause of action.

Hence, we find no error in the judge's refusal to entertain that exception as a legal defense.

4. Defendant's exception urging the plea of prescription, was likewise and properly overruled.

The very essence of the action involves the alleged violation of a promise, which is treated in the code as a contract; hence the prescription which bars a demand for damages *ex delicto* cannot apply in this case.

5. In this Court, for the first time, and by way of argument, defendant suggests as a defense his minority at the time of the alleged promise of marriage. The mere statement of that defense and of the circumstances under which it is urged, carries with it its complete refutation.

Such a plea, unless set up in the pleadings, and *in limine*, could not have opened the door to evidence in support of it in the lower court; it stands to reason that it cannot be entertained for a moment when conceived for the first time on appeal.

Defendant's bill of exception presents the question of the admissibility of evidence in support of the alleged seduction of the plaintiff by the defendant.

His contention is that, as seduction cannot be the basis of a demand of damages, no proof of the same should have been allowed.

A consideration of respectable authorities from our sister States has led us to the conclusion that in an action for breach of promise by a woman, evidence that she was seduced by the defendant under a promise of marriage was admissible, as an element of damages growing out of circumstances so closely connected together. 102 Mass. 395; 106 Mass. 339; 11 O. S. 330; 27 Mich. 217: 37 Ala. 379.

The same doctrine has been held in France, whence we derive all our system touching the contract of marriage and its attendant circumstances. Journal du Palais, 1867, 208; 1865, 730.

Smith vs. Braun.

We therefore sustain the district judge in his ruling on the defendant's objection to that evidence.

Plaintiff objected to the introduction of evidence tending to show that she was an unchaste person and loose in her habits and morals, on the ground that such evidence was inadmissible under a general denial.

Defendant had a two-fold purpose in resorting to that attack.

1. He desired thus to rebut the proof of his promising to marry a woman known to be lewd and unchaste.

2. He sought to justify his alleged breach of promise to marry a woman whom he subsequently discovered to be undeserving of his love and of his name.

We think that the district judge erred in his unqualified or unreserved admission of testimony on that point. As an element to rebut the proof of a promise of marriage, it was properly admissible under a general denial—and to that end and to that extent only we shall consider that testimony in our disposition of the case on the merits.

But, as a means of justifying a breach of the promise of marriage, it was clearly inadmissible in the absence of an averment to that effect in the pleadings.

The general denial put at issue all the facts and the law invoked by plaintiff in support of her demand of damages for a breach of an alleged promise, but more particularly and essentially the existence of the promise it cannot be tortured to mean an admission of the promise and a reason for a breach thereof· That defense is manifestly excluded by an unqualified general denial—and an attempted proof of the same must of necessity take the plaintiff by surprise, and is not covered by the scope of the defense.

In the case of Cass vs. Cass, 34 Ann. 64, which was an action by the wife for separation from bed and board, we were called to treat of a kindred question, and we reached an analagous conclusion.

In that case the defendant husband had been refused a new trial, which he had sought on the ground of newly discovered evidence, which would have proved, as contended for, his wife's adultery committed previously to her action for separation. The new trial was refused by us on the ground that defendant had not alleged his wife's adultery in his pleadings—we said: "A correct test of defendant's right to a new trial, under these circumstances, is found in the solution of the question of the admissibility of that evidence under the pleadings;" and we concluded by saying: "We are clear in our conclusion

that in the absence of a specific allegation of adultery in a suit like this, the defendant cannot be allowed to introduce evidence of adultery against the plaintiff, who would thus be completely surprised, and deprived of the time or opportunity to prepare her defense against the most heinous charge which can be hurled at a married woman and a mother."

That reasoning applies with great force to the question now under consideration, and in admitting that testimony as a means of resistance to plaintiff's testimony on the question of the promise of marriage, while we exclude it as a support of justification of the breach of the promise, we make the most liberal ruling in favor of the defendant, which he could possibly obtain under the *status* of his pleadings.

After a careful examination of that testimony, under the restriction above indicated, and without reference to its details which are entirely too offensive for publication in a judicial opinion, we must state without delay, that it falls very short of its intended effect; and that it utterly fails to justify even a suspicion of the virtue and chastity of plaintiff previous to and up to the time of her alleged engagement to marry the defendant.

The record fails to show the existence of any circumstances which would naturally or legally exclude the possibility of a promise of marriage, or of a marriage between the parties to this suit.

The argument that a marriage was not probable or even possible between plaintiff and the defendant, because she was a menial servant in the employ of the defendant's mother, finds no absolute support in the ordinary experience of families, or in the light of contemporary history, and much less in the particular circumstances of this case, in which it is shown that the servant was treated with absolute equality in the defendant's family with whom she ate at the same table, and with whom she occupied the same social position; the only difference in their conditions resting on a pecuniary inequality.

The law must and does protect the rights, and it must shield the weakness of the servant maid, with the same care and solicitude that it extends to the highest and most accomplished lady of the land.

We now reach the consideration of the most difficult question in the case, and that involves the proof of the promise of marriage. Having been repeatedly called to marry the plaintiff, and having as often flatly refused to comply with his alleged promise, the defendant rests his main defense on the want of sufficient proof of his promise to marry the plaintiff.

He places great reliance on the fact that plaintiff is the only witness who testifies on that subject, and on the fact that in his testimony he denies the alleged promise with equal force and solemnity.

Hence, his counsel confidently urge upon us the reversal of the jury's verdict, as resting on insufficient evidence.

Were we called upon in the first instance to decide that vexed question, we would confess a certain degree of hesitation and embarrassment to reach a clear conclusion, although we find the testimony of plaintiff corroborated by one or two circumstances, and, although we find her statements more plausible, better connected and more straightforward than the testimony of the defendant, which is far from satisfactory and convincing, but strikes us on the contrary as improbable and glaringly contradictory. Manning's Unreported Cases, p. 398.

Hence, we are far from finding in the record any reasons to satisfy us that the verdict of the jury is manifestly erroneous, or even unjust in the sightest degree.

Such reasons alone could, under the well established rules of our jurisprudence, justify us in disturbing their verdict, and in reversing the condusions of the district judge, who refused a new trial, and, who therefore must have believed that the finding of the jury was justified by the evidence, all of which had been taken in his presence and hearing and under his observation and direction.

The present case is one peculiarly within the province of a jury for correct conclusion on conflicting testimony—and the rule above refered to finds great practical force in its application to issues like these herein involved.

Hence, we conclude not to disturb the finding of the jury, and to eave the case as they found it.

Judgment affirmed.

Rehearing refused.