## ANDERSON *v.* KIRBY.

1. In an action for breach of promise of marriage, allegations and proof of circumstances antecedent to the promise of marriage, which tend to show the relations of the parties and the state of feeling between them at the time of the alleged promise, are permissible.

2. A promise by the defendant to marry the plaintiff just as soon as the defendant's mother, who was ill, got well, was not a conditional promise of marriage, but an absolute promise to marry at an uncertain time in the future. And if, while the mother was still ill, the defendant told the plaintiff that he did not intend to marry her, the plaintiff could treat such renunciation of the contract by him as a breach of the same, and bring an action for such breach, without waiting for the time for the performance of the contract to arrive.

3. Seduction of the plaintiff by the defendant, under promise of marriage, may be alleged and proved in aggravation of the damages sustained by the breach of the contract to marry.

Argued January 19,—Decided March 23, 1906.

Action for damages. Before Judge Gober. Pickens superior court. April 26, 1905.

Ella Anderson brought an action for damages against Govan Kirby, wherein she set forth a marriage contract between him and herself, the renunciation of the contract by him, and her seduction by him under promise of marriage. The petition alleged, that from July, 1902, to February, 1903, defendant lived with his aged mother, Mrs. Mary Kirby, who, during all of this time, was seriously ill with fever and was nursed by plaintiff, who stayed at Mrs. Kirby's house; that defendant began to court plaintiff and make love to her soon after she went to his mother's house, and that in September, 1902, at his earnest solicitation, plaintiff promised to marry him, and he told her "that they would get married just as soon as his mother got well." The circumstances under which the alleged seduction was accomplished were set forth, in connection with which it was alleged that, in persuading plaintiff to have sexual intercourse with him, defendant "reminded her that they were engaged and that they would soon get married, and begged her to yield to him, telling her that no one would ever find it out, and that there was nothing wrong about it, as they would get married as soon as his mother recovered." The petition also alleged, that defendant's brother claimed to have caught them in the act of sexual intercourse, and on his evidence they were indicted at the April adjourned term, court, and paid the fine; that "after February, 1903, defendant was

not as attentive to petitioner as he had been; he would give one ex- use after another to postpone their marriage, and finally, after they were indicted as aforesaid, defendant refused to marry petitioner, claiming that he did so on account of the publicity of their said intimate relations." In the original petition, plaintiff claimed that she had been injured and damaged in the sum of five thousand dollars, "on account of being seduced as aforesaid by defendant, and on account of his breach of promise of marriage as aforesaid;" and prayed judgment accordingly. The defendant demurred to the petition, the grounds of demurrer being set out below, as paragraphed and numbered therein. (1) There are two causes of action set out in the petition, plaintiff seeking "to recover damages for an alleged tort and an alleged breach of promise, both causes of action being set out and declared upon in a single count and in the same action." (2) There is a misjoinder of causes of action, "a cause of action arising ex delicto with a cause of action arising ex contractu." (3) Specially, to paragraph No. 4 of the petition (a copy of which appears in the following opinion), "upon the ground that the allegations therein stated are immaterial, irrelevant, and foreign to the cause of action claimed." (4) "Specially, to the first five lines in paragraph No. 6 of plaintiff's petition and to all of the sixth line in said paragraph except the last five words in the sixth line," upon the same ground as that just above indicated. (The matter here demurred to will be found in the opinion.) (5) To the whole petition, "upon the ground that the same sets forth no sufficient cause of action against defendant, and said petition shows upon the face thereof that the plaintiff is not entitled to maintain her present action, and the allegations therein set out do not authorize a recovery in this case." Pending the demurrer, the plaintiff amended her petition as follows: "By striking out all of the following words in the prayer, to wit: 'On account of being seduced as aforesaid by defendant and,' " so that the petition, as thus amended, did not pray for a recovery of damages for the alleged seduction. The court, notwithstanding this amendment to the petition, sustained the demurrer, and dismissed the petition, the judgment of his honor being in the following language: "The foregoing demurrer read and considered, and after argument it is ordered by the court, as to paragraphs 3, 4, 5 thereof, that the same be sustained and plaintiff's petition dismissed." Plaintiff filed a

bill of exceptions, wherein error was assigned upon this judgment, and that "the court erred in sustaining the demurrer or any part of it."

N. A. *Morris* and *Isaac Grant,* for plaintiff.

John W. *Henley* and *F. C. Tate,* for defendant.

FISH, C. J. (After stating the facts.) We think the judge erred in sustaining the special demurrers to paragraph four and a portion of paragraph six of the petition. Paragraph four was as follows: "From July, 1902, to February, 1903, defendant lived with his aged mother, Mrs. Mary Kirby, in said county. During all this time said Mrs. Kirby was seriously sick with fever, and petitioner stayed at her house and waited upon her day and night." Paragraph six alleged, that the petitioner's sister helped her wait upon Mrs. Kirby a part of the time, and contracted fever while doing so, was sick only a few days, and died; that "defendant would often remind petitioner of this fact while courting her, stating to petitioner that her sister contracted fever from his mother and died, and that he loved petitioner more on this account, and as soon as his mother recovered he would marry her and make her happy and comfortable the balance of her life." It is impossible to tell how much of this paragraph, as it is copied in the record, was demurred to; for it is clearly apparent that the lines of written matter in this paragraph in the record do not correspond with the lines of such matter in the original petition. But we think it was permissible for the plaintiff to allege everything contained in this paragraph. Upon denial by defendant of the alleged promise to marry plaintiff, we think it would be competent for plaintiff to prove the circumstances under which she and defendant were thrown in intimate, daily association with each other for some time prior to the alleged engagement, and any facts which tended to show the state of his feelings toward her at the time of the alleged promise. Particularly is this true as to facts and circum- stances to which he referred, while paying his addresses to her, as having caused or increased his love for her, and which might naturally have had that effect. Such facts and circumstances, coupled with his declarations as to the influence which they had upon him, would tend to corroborate evidence as to a specific prom- ise by him to marry plaintiff, and thus strengthen the probability that he did, in fact, make such promise. We do not think that in

cases of this character a rigorous rule of exclusion should be applied to circumstances which, if proved, would tend to illustrate the state of feeling between the parties at the time when it is alleged the contract to marry was entered into. While it was not necessary for plaintiff to allege these circumstances in order to state a cause of action, yet, as it would be proper for her to prove them upon a trial of the case, we see no reason why it was not permissible for her to allege them by way of inducement to the more material and substantial allegations of the petition.

2. Of course, sustaining the special demurrers which we have just been considering would not have resulted in the dismissal of the case, but would have simply stricken from the petition the allegations alleged by the demurrers to be immaterial and irrelevant. The order of dismissal was the logical and inevitable result of sustaining the fifth paragraph of the demurrer, which was, in effect, a separate demurrer upon the ground that the petition set forth no sufficient cause of action, and showed "upon the face thereof that the plaintiff is not entitled to maintain her present action." In support of the judgment of the court, sustaining this general demurrer, counsel for defendant in error contend that "It appears upon the face of plaintiff's petition that the alleged promise of marriage was conditional, contingent upon the recovery of defendant's mother from sickness," and that, as it is not alleged that she recovered, there "is no sufficient allegation of the breach of the promise set out in the declaration." The contention that the promise was conditional is not sound. The promise alleged in the petition is not that the defendant would marry the plaintiff *if* his mother recovered from her sickness, but the promise, on one occasion, was "that they would get married as soon as his mother recovered," and, upon another occasion, it was "that they would get married just as soon as his mother got well,"—the same thing, with but slight alteration in the language. This was not a conditional, but an unconditional promise to marry, to be performed at an uncertain time in the future. The time for the performance of the promise was to be fixed by the recovery of defendant's mother from her illness. The effect of the promise was, that the marriage agreed upon was not to take place while the mother remained ill, but as soon as she ceased to be ill the marriage was to occur. The expressions, "as soon as his mother recovered," and "just as soon

as his mother got well," carry the idea that the mother's illness was all that prevented an immediate marriage, and that "as soon as" this reason for postponing the marriage was removed, it should take place. It would be utterly unreasonable to construe this promise as being contingent upon the recovery of the defendant's mother from her sickness, so as to absolve him from it if she died. We are clearly of opinion that he would have been bound by this promise if his mother had died. While the petition did not allege that the defendant's mother had recovered from her illness, or that she had died, it did allege that the defendant, after giving "one excuse after another to postpone the marriage," had finally "refused to marry petitioner, claiming he did so on account of the publicity of their [illicit] intimate relations," occasioned by their indictment for fornication. After this absolute renunciation of the contract by defendant, plaintiff was not obliged to wait until the time for its performance arrived before bringing suit, but could treat the contract as broken by defendant and bring suit for its breach at once. This principle is well settled by a long line of authorities. In the English case of Frost *v.* Knight, reported in Law Rep. 5 Exch. 322, Law Rep. 7 Exch. 111, and 41 L. J. (N. S.) 78, the action was for breach of promise of marriage. The promise of defendant proved was to marry plaintiff on the death of defendant's father. While the father was still alive, defendant announced his intention of not fulfilling his promise on the death of his father, and broke off the engagement, upon which plaintiff, without waiting for the father's death, at once brought suit. The plaintiff obtained a verdict, and upon a rule nisi to arrest the judgment, upon the ground that a breach of the contract could only arise on the father's death, till which event no claim for performance could be made, and no action for breach of the promise could be maintained, two of the judges of the Court of Exchequer concurred in making the rule absolute; from which judgment the third judge dissented. But upon a review of this decision in the Exchequer Chamber, the judgment was reversed, all four of the judges presiding at the time of the decision concurring in the judgment of reversal. Chief Justice Cockburn delivered an elaborate opinion, in which it was held that the case fell within the principle of Hochster *v.* De la Tour, 2 E. & B. 678, 22 L. J. (Q. B.) 455; and Danube and Black Sea Co. *v.* Xenos, 13 C. B.

(N. S.) 825, 31 L. J. (C. P.) 284. In the opinion he said: "The considerations on which the decision in Hochster v. De la Tour is founded are that the announcement of the contracting party of his intention not to fulfill the contract amounts to a breach, and that it is for the common benefit of both parties that the contract should be taken to be broken as to all its incidents, including non-performance at the appointed time; as by an action being brought at once, and the damages consequent on non-performance being assessed at the earliest moment; many of the injurious effects of such non-performance may possibly be averted or mitigated. It is true, as pointed out by the Lord Chief Baron, in his judgment in this case, that there can be no actual breach of a contract by reason of non-performance so long as the time for performance has not yet arrived. But, on the other hand, there is—and the decision in Hochster v. De la Tour proceeds on that assumption—a breach of the contract when the promisor repudiates it and declares he will no longer be bound by it." After forcibly giving the reasons upon which this principle is based, he said: "It appears to us that the foregoing considerations apply to a contract, the performance of which is made to depend on a contingency, as much as to one in which the performance is to take place at a future time; and we are, therefore, of opinion that the principle of the decision of Hochster v. De la Tour is equally applicable to such a case as the present. It is next to be observed, that the law as settled in Hochster v. De la Tour and Danube and Black Sea Company v. Xenos, is obviously quite as applicable to a contract in which personal status or personal rights are involved, as to one relating to commercial or pecuniary interests. Indeed, the contract of marriage appears to afford a striking illustration of the expediency of holding that an action may be maintained on the repudiation of a contract to be performed in futuro."

The rule laid down in Hochster v. De la Tour was expressly recognized by this court in Smith v. Georgia Loan Co., 113 Ga. 975, the first headnote in which is as follows: "After the renunciation by one party of a continuing contract consisting of mutual obligations, the other party is at liberty either to immediately treat such renunciation as a breach of the contract and sue for any damages he has sustained by reason of the breach, or to treat the contract as still binding, and wait until the time arrives for its performance,

in order to give the party who has repudiated the contract an opportunity to comply with its terms." In the opinion, delivered by Mr. Justice Cobb, it is said: "The rule sought to be invoked was laid down by the Supreme Court of the United States in a recent case after an elaborate consideration of the authorities. The conclusion reached by the court is thus succinctly stated in the headnotes: 'After a careful review of all the cases, American and English, relating to anticipatory breaches of an executory contract, by a refusal on the part of one party to perform it, the court holds that the rule laid down in Hochster *v.* De la Tour, 2 El. & Bl. 678, is a reasonable and proper rule to be applied in this case. That rule is, that after the renunciation of a continuing agreement by one party, the other party is at liberty to consider himself absolved from any future performance of it, retaining his right to sue for any damage he has suffered from the breach of it; but that an option should be allowed to the injured party, either to sue immediately, or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option.' Rhoem *v.* Horst, 178 U. S. 1. This rule was expressly limited by the court to contracts containing mutual obligations." In Holloway *v.* Griffith, 32 Iowa, 409 (7 Am. Rep. 208), it was held: "Where one of the parties to a contract to marry at a certain time renounces the contract before that time has arrived, the other party may treat such renunciation as a breach, and may at once maintain an action therefor." In that case counsel for the appellant, who was the defendant in the court below, relied upon the decision which had then been recently made in Frost *v.* Knight by the Court of Exchequer in England, but the Iowa court refused to follow that decision, which, as we have seen, was subsequently overruled in the Exchequer Chamber in the judgment pronounced by Lord Cockburn. In Burtis *v.* Thompson, 42 N. Y. 246 (1 Am. Dec. 516), the contract between the parties was to marry "in the fall." In October the defendant expressly refused to marry the plaintiff at any time. It was held that an action for breach of the contract, begun on October 25, was not prematurely brought. Grover, J., held broadly that "One who contracts to marry on a future day, and, before that day arrives, refuses to perform the contract at any time, is instantly liable to an action for breach of promise to marry." So, in the breach of promise case

of Burke v. Shaver, 92 Va. 345, it was held: "If one repudiates his promise and declares he will not be bound by it, the promisee need not wait for the time of performance to arrive, and if the engagement is general, need not request its fulfillment, but may sue at once for the breach." And in Kennedy v. Rodgers, 2 Kan. App. 764, it was held: "A positive refusal to perform a contract to marry, even if made before the time for the performance, is such a breach of the contract as will authorize an immediate action for damages." In Coil v. Wallace, 24 N. J. L. (4 Zab.) 291, it was held: "It is unnecessary, in an action for a breach of promise to marry, to prove an actual request and refusal; it is sufficient if there appear by the conduct of the parties and by circumstances an unequivocal intention of the defendant not to perform his contract." In Gough v. Farr, 2 Car. & Payne, 631, the defendant, on being asked by plaintiff's father if he intended to marry plaintiff, replied, "Certainly not," and this was held sufficient to entitle plaintiff to maintain her action; the declaration of intention not to marry her being held equivalent to a refusal. Willard v. Stone, 7 Cowen, 22 (17 Am. Dec. 496), went even farther and held that "Refusal to marry may be inferred from a total cessation of intimacy without explanation." This ruling was followed in Hubbard v. Bonestell, 16 Barb. 361. In Kelley v. Brennan, 18 R. I. 41, it was held that a refusal by the defendant to marry the plaintiff before the suit was begun "was a breach of the defendant's engagement to marry the plaintiff, and dispensed with the necessity for an offer on the part of the plaintiff to marry the defendant before bringing the suit, if such an offer would otherwise have been necessary."

3. Counsel for defendant in error further contend, "that plaintiff's petition does not set out a breach of promise of marriage, but shows an attempt to maintain an action to recover damages for her own seduction," and that "she can not maintain such action." The petition as originally drawn declared upon two causes of action, a breach of promise of marriage and the seduction of plaintiff by defendant, under such promise. It never was susceptible of the construction that it did not declare upon the breach of promise, but before it was amended by striking therefrom the claim, or prayer, for damages for the act of seduction, it did also seek to found a right to recover upon the seduction, independently of the breach of the contract. The first and second paragraphs of de-

fendant's demurrer pointed out this defect, and alleged that there was a misjoinder of causes of action, an action arising ex delicto and an action arising ex contractu; and, pending the demurrer, plaintiff amended her petition as above indicated. After this amendment, the petition stood as an action for breach of promise of marriage, with the allegations therein of the seduction under promise of marriage as simply matter alleged in aggravation of the damages sustained by reason of the breach of the contract. There is an abundance of authority—and but few cases to the contrary— to the effect, that where the common-law rule, that a woman seduced can not maintain an action for her own seduction, prevails, seduction, under promise of marriage, may be alleged and proved in an action for breach of promise of marriage, in aggravation of the damages consequent upon the breach. This rule is deducible from the authorities in England and from the great current of authorities in our American States. 2 Sedg. Damages, § 639; 1 Bish. Mar. and Div. § 232; Cooley on Torts, 510; 3 Suth. Damages, 316; McKinney *v.* Squires, 32 W. Va. 41; Dent *v.* Pickens, 34 Ib. 240; Geiger *v.* Payne, 102 Iowa, 581; Getzelson *v.* Bernstein, 37 N. Y. Supp. 220; Kniffen *v.* McConnell, 30 N. Y. 285; Tubbs *v.* Van Kleek, 12 Ill. 446; Burnett *v.* Simpkins, 24 Ib. 264; Smith *v.* Braun, 37 La. Ann. 225; Hattin *v.* Chapman, 46 Conn. 607; Sauer *v.* Schulenberg, 33 Md. 288; Sherman *v.* Rawson, 102 Mass. 395; Kelley *v.* Riley, 106 Ib. 339; Bennett *v.* Beam, 42 Mich. 346; Bird *v.* Thompson, 96 Mo. 424; Wilds *v.* Bogan, 57 Ind. 453; Giese *v.* Schultz, 69 Wis. 521; Collins *v.* Mack, 31 Ark. 684; Tyler *v.* Salley, 82 Me. 128; Daggett *v.* Wallace, 75 Tex. 352; Mussleman *v.* Barker, 26 Neb. 737; Williams *v.* Hollingsworth, 6 Baxt. (Tenn.), 208; Spellings *v.* Parks, 104 Tenn. 352; Berry *v.* Da Costa, L. R. 1 C. P. 331; Millington *v.* Loring, 6 Q. B. Div. 190. Even in States where the common law has been changed by statute, so that a woman may maintain an action for her own seduction, it has been held that the statutory right of action for seduction does not preclude an allegation of seduction, in a breach of promise suit, as an element of damages. Osman *v.* Winters, 25 Oreg. 260; Haymond *v.* Saucer, 84 Ind. 3. The ruling in Sheahan *v.* Barry, 27 Mich. 219, is to the same effect, as a statute in Michigan authorized an action for seduction to be brought by any relative of full age whom the woman might select. In some of the States, evidence as to seduction is

only admitted, to aggravate damages, where, as in the present case, the seduction is alleged in the declaration; while in others such evidence is admissible for this purpose even though the seduction is not alleged. A contrary view to that deducible from the many authorities which we have cited has been taken in Pennsylvania and Rhode Island. Weaver *v.* Bachert, 2 Pa. St. 80; Baldy *v.* Stratton, 11 Pa. 316; Perkins *v.* Hersey, 1 R. I. 493. The view that evidence of seduction is not admissible in an action for breach of promise of marriage is also taken in Kentucky, in the case of Burks *v.* Shain, 2 Bibb, 341; but there the seduction occurred prior to the promise to marry. That case, therefore, is simply in line with Espy *v.* Jones, 37 Ala. 379, where it is held that evidence of seduction before promise is not admissible. In *Graves* v. *Rivers,* 123 *Ga.* 224, it was held that seduction of the plaintiff by the defendant subsequently to the promise to marry and pending the engagement may be alleged and proved in aggravation of the damages in an action for breach of such promise.

It is clear that the injury which a woman sustains by a breach of a promise of marriage is greater if, pending the contract to marry, the man who promised to marry her has seduced her, than it would be if no seduction had occurred. She is entitled to recover the damages which she has sustained by reason of the breach of the promise, and no fair and reasonable estimate of such damages can be made without taking into consideration the circumstances under which the breach occurred and the condition in which she was left in consequence thereof. She is entitled to recover for her mental suffering caused by the breach of the contract (*Parker* v. *Forehand,* 99 *Ga.* 743), and it seems evident that her sense of mortification, shame, and humiliation must be much greater if she is left by the breach both unmarried and seduced. Marriage would, in some measure, atone for the wrong of seduction; but to be discarded and abandoned, after being seduced, brings to her the added mortification and humiliation consequent upon the knowledge being brought home to her that she has surrendered the priceless jewel of her chastity to one who has proved himself utterly unworthy of her love and trust, and who won her implicit confidence only to betray it. The sense of mortification and humiliation which, prior to the breach of the promise to marry, she may have felt from the knowledge of her seduction is necessarily increased and intensified

by the knowledge of her base betrayal and abandonment by the
unworthy object of her affection and trust, which only comes home
to her when he repudiates the marriage promise. It follows that
the circumstances environing her at the time of the breach of the
promise to marry, such as the fact of the seduction and its pub-
licity, are proper matters to be taken into consideration by the jury
in estimating the damages which she has sustained by the breach of
the contract to marry.

The petition set forth a cause of action, viz., the breach by de-
fendant of the promise to marry plaintiff; and, as amended, this
was the only cause of action which it did set forth, the allegations
as to the seduction under promise of marriage being properly re-
tained as allegations of fact showing an aggravation of the dam-
ages incident to the repudiation of the contract to marry by de-
fendant. It follows that the judgment of the court below, sus-
taining the general demurrer and dismissing the petition, must be
reversed.          *Judgment reversed.     All the Justices concur.*