POLLY JACKSON, mother and next friend of MADDY M., ANSELINA M., and RANDAL A. JACKSON, infants and illegitimates, plaintiffs in error, *vs.* BENJAMIN W. FINNEY and CHARLES RALY, as administrators of RANDAL RALY, deceased, defendants in error.

1. Forbearance by the mother to prosecute the putative father of bastard children under the bastardy laws of this State, constitutes a sufficient consideration to support a promise by such father, to pay money or settle property for the benefit of such offspring.

Bill in Equity, in Wilkinson Superior Court, tried before Judge IVERSON L. HARRIS, at April Term, 1863.

The facts of this case are so fully stated by Mr. Justice LYON, in delivering the opinion of the Court, that a statement from the Reporter is wholly unnecessary.

WINGFIELD, for plaintiff in error.

BAILEY and DEGRAFFENRIED, for defendants in error.

*By the Court*—LYON, J., delivering the opinion.

This was a bill filed by Polly Jackson, as the mother and next friend of Maddy M., Anselina M., and Randal A. Jackson, infants and illegitimates, against Benjamin W. Finney and Charles Raly, as the administrators of Randal Raly, then lately deceased, in which it is alleged that the infant complainants are the illegitimate children of the defendant's intestate, and that the intestate, while in life, in consideration of his moral obligations to provide for his said offspring, as well also as of his legal liability so to do, under the bastardy laws of this State, and in further consideration that the said

mother of them would forbear to assert the rights of said infants under said laws, promised and undertook, in lieu of the provisions secured by said bastardy laws, to make said infant children his heirs-at-law, and that they should have all of his intestate property at his death, and that in consideration of such promise, the complainant, Polly, trusted thereto, and forbore to enforce said laws against him. Much more is alleged in the bill as to the anxiety of Randal Raly to secure this object in his lifetime, his affection for the children, who were all that he had ; his declarations of what he was doing and intended for them, and that he had already employed counsel and taken certain initiatory steps to legitimatize them, etc., which it is not necessary to particularly notice. The bill prayed an account, and that the administrators be directed to turn over said estate to them in accordance with his agreement and promise.

The defendants by their answer admit that their intestate acknowledged himself to be the father of two complainants, but denied that the youngest, Randal A., was his child, and they, in fact doubted whether any of the complainants were the children of their intestate, notwithstanding his declarations to the contrary. The answer denies every other material allegation in the bill,

On the trial, William A. Hall, a witness for the complainants, testified that intestate told him that he was going to Irwinton to employ a lawyer to have his property secured on his, the children of Polly Jackson, and that said Raly did employ N. A. Carswell, Esquire, to institute proceedings to have these children legitimated and make them his heirs, and that he intended what he had for them. The witness had seen the children and the mother at Raly's. In a subsequent conversation Raly said that some persons were trying to get her, Polly Jackson, to prosecute him, but she would not, and they could not get her to do so, because she knew that he intended to give these children all the property he had. Raly said that the reason the woman did not prosecute him was, because she knew that he intended all he had for these children, that he had got into this trouble with this

VOL. XXXIII—33.

woman and could never marry a respectable woman, and therefore he intended to work for these children.    He spoke of his attachment to them and his purpose as before expressed, just three days before his death.

Wesley King, another witness sworn for complainants, confirms all said by the witness, Hall.    On the 4th of July, before Raly was killed, (he was killed on the last of July or first of August,) witness was at the house of Raly, and asked him what he intended to do with the children.    Raly called up one of them, kissed it, and said that he was working for them, and that he intended to fix it so that he would give it all to them, that he instituted proceedings, and it would have been done but for the influence of Thomas Jackson, in preventing the mother of the children from signing some papers, but that it was still going on and he would do it yet.

The original petition of Raly to legitimatize the children was also in evidence.    The jury rendered a verdict for the defendant, and the complainants moved for a new trial on the following grounds :    1st. That the verdict is against and contrary to evidence.    2d. Because the Court failed to charge the law.  3d. Because the evidence of one of the witnesses was that Raly told him that Polly would not avail herself of the right of prosecuting and compelling him to give bond for the support of the children, because she knew that he intended to make them his heirs, and it further appeared that she did forbear, on that account, to avail herself of said legal proceedings.    Yet upon this state of facts, the Court virtually told the jury there was no agreement, inasmuch as the Court, on this branch of the case, charged the jury that any vague understanding of the parties did not amount to such a contract or agreement as a Court of Equity would enforce.

4th.  Because on the trial of said case, the Court remarked in the hearing of the jury, " Colonel Wingfield, as this case is in the last resort, I will give you the chance to prove a contract if you can," after plaintiff had closed his case.

5th.  Because the Court said in its charge, that forbearance to prosecute was no consideration, as any could prosecute that saw fit or proper.

6th. Because of newly discovered evidence.

The newly discovered evidence referred to as the basis of this ground, we suppose, is contained in an affidavit of Polly Jackson appended to the record, for the record contains nothing else that looks like newly discovered evidence, and no other reference is made to it.   The affidavit states that Randal Raly promised her in his lifetime, and many months before his death, that if she would not run the law upon him as father of her children, that he would take care of them, and that the children which he had by her should be his heirs; that she never communicated this fact to the counsel employed for complainant until since the trial, not knowing its value; that she has been informed that Major Samuel T. Player, now in the Confederate army, will prove the same, and this was not communicated to her, or to her counsel, until since the trial." The Court overruled the motion for a new trial, and this is the judgment complained of.

As we are constrained to send this case back for a new hearing, on account of misdirection by the Court to the jury in the matter contained in the fifth ground of the motion for a new trial, and as the record is imperfectly made up, and as the matters contained in the other grounds may be strengthened, weakened or varied, perhaps, assuming an entirely different shape, and if not, any comment upon them by us might improperly affect the merits of the cause in the trial below, and as, too, we are not fully agreed as to the propriety of ordering a new trial under the circumstances, I shall forbear a discussion of any except the ground on which our judgment is placed.

By the fifth ground of the motion for new trial, it appears that the Court below instructed the jury that " forbearance to prosecute was no consideration." Understood with reference to the case before them, as it must be, the charge means that a forbearance to prosecute the father of illegitimate children for bastardy, by the mother, does not constitute a consideration sufficient to support a promise or agreement by the father to give or secure property to such children to avoid such prosecution.

This charge is in conflict with several decisions of this Court on this question, and is, therefore, erroneous. Hargrove vs. Freeman, 12 Ga., 342; Davis vs. Moody and wife, 15 Ga. "Such liability of the father, by statute, to support the bastard child, until it arrives at the age of fourteen, constituted a good consideration for any such settlement as it is insisted that he had made for the benefit of the girl he had wronged." The case in the 12th was a promise for the benefit of the offspring; so also was McFarland's case, decided at Macon, and not yet published, but which will make its appearance in the 32d volume.

The Court in this case were agreed as to the principle here re-affirmed, but one of its members, Judge Jenkins, did not think that the proof made out such a case as would have entitled the complainant to a decree, and that therefore no wrong had been done to the parties. I mention this fact in justice to Judge Jenkins, but for the reason already stated, shall decline to discuss the question made by it.

Let the judgment be reversed.

Judge JENKINS dissented from the judgment of a majority of the Court in this case, but did not furnish the Reporter with a dissenting opinion.