Duncan *et al. vs.* Pope.

C. C. DUNCAN, administrator, *et al.*, plaintiffs in error, *vs.* SALLIE POPE, by her next friend, defendant in error.

1. A bastard, acknowledged and supported by its father in his lifetime, cannot (in the absence of any contract for its support by the father) by suit against his administrator, compel him, under section 1789 of the Code, to furnish maintenance out of the estate of his intestate to such bastard during his minority, even though the father may have stated that he intended the child should be supported out of his estate after his death.

2. If the heirs of the father make a deed to the bastard, of their interest in realty held by the father in his lifetime as tenant in common with another, the bastard takes such interest as the heirs held at the date of the deed, and is entitled to a partition as between himself and the other tenant in common.

3. A promise by the administrator to secure the whole of the land so held in common to the bastard is beyond his authority, and does not bind the estate.

4. A grantor cannot deliver a deed to the grantee or his attorney as an escrow. Such a delivery would be equivalent to adding a parol condition to the instrument. To make the deed an escrow, it should be delivered to a third person, to be by him delivered to the grantee upon the performance of any required condition.

5. No exceptions can be heard in this Court that were not made in the Court below, even where the record shows that such exceptions might have been there made, had the plaintiff in error chosen to do so.

Illegitimate child. Partition. Consideration. Escrow. Delivery. Exceptions. Before Judge COLE. Bibb Superior Court. October Adjourned Term, 1871.

Sallie Pope, a minor, by her next friend, William Bishop, filed her bill containing substantially the following allegations: That she is the illegitimate child of James S. Pope, deceased, and so acknowledged by him to be; that her said father during life always treated complainant indulgently and kindly, and frequently openly averred his intention to give to complainant a large portion of his estate at his death, to supply her wants and to preserve her from suffering and poverty; that her said father was prevented from carrying into effect this often expressed intention by his sudden and unexpected death, which occurred in 1866; that said death was so sudden as to prevent the execution of a will; that her father left property to the value of $20,000 00, and the defendant, C. C. Duncan, was duly granted letters of administration upon said estate; that though complainant, under the law of Georgia, cannot inherit said property, yet she is entitled to be supported maintained and educated during the period of her minority out of the property of the estate of her said father; that she had applied to said Duncan to have said support set aside; that complainant and her mother had been placed by the said James S. Pope, during life, in possession of a certain house and lot in the city of Macon, and that complainant, by her tenant, is still in possession of said property; that in response to the application of complainant, Duncan made some indefinite promise to convey in fee simple to complainant said property, but would never execute any conveyance; that complainant placed the matter in the hands of Simmons & Bacon, attorneys at law, to secure her rights in the Courts; that upon being approached by complainant's said attorneys, said Duncan agreed to convey said property in trust for her, but postponed the execution of a deed for a few months, until the heirs of said Pope, deceased, should become of age; that subsequently to said arrangement complainant, by her attorneys,

Duncan *et al. vs.* Pope.

discovered that Stephen and A. P. Collins owned a two-sevenths interest in said property; that upon the representation of Duncan that said interest could be purchased for a trifling sum, complainant did not then repudiate the agreement; that complainant was not informed at the time of said negotiations that there was a bill pending in Houston Superior Court, filed by Stephen Collins and A. P. Collins against the said C. C. Duncan, administrator, for the partition of said property, and for the recovery of the rent; that said Stephen Collins and said Duncan had had repeated conversations with complainant's solicitors in reference to the conveyance of said property to her, and had carefully concealed from her the pendency of the aforesaid litigation; that said Duncan and Stephen and A. P. Collins combining and confederating together for the purpose of defrauding complainant in the premises, at the last term of Houston Superior Court, entered into a consent decree that said house and lot be sold for partition, and that two-sevenths of the proceeds of said sale be paid to the said Stephen and A. P. Collins, and the sum of $125 00 for rent of said two-sevenths also to be paid out of the proceeds of sale; that under said decree, James Martin, sheriff of Bibb county, has levied upon and advertised said property for sale on Tuesday, the 5th day of April; that after the aforesaid decree had been taken, Duncan sent to complainant a quit claim deed to said property, signed by the heirs of her deceased father, at the same time communicating the facts as to said decree, which was the first information that complainant ever received that said bill was or had been pending; that the date to said deed is showed, and appears to have been changed from January 4th, 1870, to February 28th, 1870, so as to give effect to the same subsequent to the time of said consent decree; prayer, that defendants may be enjoined from further proceeding under said decree, or from transferring the same, or from conveying said property to any third person until the further order of the Court; that Duncan may be required to account with Stephen and A. P. Collins for whatever amount may be due them, and to convey said property to complainant

free from any incumbrance or claim whatever, or that such sum of money be paid to the use of complainant as may be necessary for her support, maintenance and education during her minority.

The joint answer of the defendants, Stephen and A. P. Collins, admitted most of the allegations of the bill, but denied that they had combined or confederated with Duncan to defraud complainant, and also alleged that in the entire transaction as to the house and lot they alone negotiated with Duncan, and had no connection whatever with complainant, regarding her as having no interest whatever in the property; prayer, that their answer may be considered as a cross-bill, and that two-sevenths of said house and lot be decreed to be the property of defendants, and that the same be sold for partition and defendants' share be paid to them, with rent from August 1st, 1866.

The defendant, Duncan, answered the bill, substantially, as follows: That soon after the death of said Pope, a colored woman named Josephine, formerly the property of James Ralston, called on defendant, and represented that she had an illegitimate child by said Pope; that said Pope had promised to provide for said child, and she thought some provision ought to be made; that said child, who is complainant, was at that time six or seven years of age, and when born, was the property of James Ralston; that said woman represented to defendant that if he would give to her certain articles of personalty and the interest then owned by Mr. Pope's estate in the house and lot mentioned in complainant's bill, that it would be satisfactory to her and her child; that defendant consented to the arrangement and delivered to her the personalty, and authorized his agent to place her in possession of the house and lot, she agreeing to pay Messrs. S. and A. P. Collins their proportion of the rent, and, under no circumstances, to encumber the estate of said Pope with the payment of said rent; that at the time this agreement was entered into, it was well understood by said woman, Josephine, that Mr. Collins owned two-sevenths interest in said house and lot; that defendant

refused to execute a deed, as administrator, but promised that the heirs of Pope should do so as soon as they attained to the age of twenty-one, no rent being charged against said Josephine in the meantime; that in accordance with instructions from said Josephine, defendant forwarded said deed, when executed, to Messrs. Bacon & Simmons, whom he understood to represent said woman and her said child; that in July, 1868, said A. P. and S. Collins filed their bill in equity in Houston Superior Court for partition of said premises and for rent, and at July term, 1870, a decree for partition was rendered, and also a decree for $125 00 for their proportion of the rent; that defendant always understood that Messrs. Bacon & Simmons represented the woman Josephine, as well as complainant; that Messrs. Bacon & Simmons received said deed with the understanding that it was to be in full of all claims against Pope's estate, but yet said attorneys still retain the deed and continue the case.

The Court charged the jury as follows:

"If the evidence satisfies you that Sallie Pope was the illegitimate child of J. S. Pope; that he had recognized and adopted her as his child, and had promised to provide for, support, maintain and educate her, such relationship and promise was good and binding on him and on his estate, it being alleged in the bill, admitted in the answer, and proven that Mr. Pope had no legitimate child and wife, and that he had promised to provide for this child, and the administrator having undertaken to carry out this promise, he is bound to do it in good faith. If you believe that the title executed to her by the administrator and the heirs of Mr. Pope was defective, and did not convey to the child the whole property according to the agreement and undertaking, then you may decree that the administrator make a good title to the whole lot, or you may decree that he pay to her the value of the lot as proven. You will take the case and decide it according to the law as I have given it to you and the evidence produced to you."

The jury returned the following verdict:

"We the jury find and decree, that C. C. Duncan, admin-

istrator of the estate of J. S. Pope, pay to William Bishop, next friend of Sallie Pope, the sum of $800 00, and that the said described property be sold by the sheriff of Bibb county for partition; that of the proceeds of said sale, two-sevenths shall be paid to A. P. and S. Collins for their interest in said property, and that said C. C. Duncan, administrator, shall pay to said A. P. and S. Collins the sum of $227 05 for rent of said two-sevenths of said property from the 1st day of August, 1866, to February 1st, 1872."

The defendant, Duncan, moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict is contrary to the evidence.

2d. Because the verdict is contrary to law and equity in this, that there was no evidence to sustain or show any contract between complainant and J. S. Pope, deceased, or with said C. C. Duncan, his administrator.

3d. Because the Court erred in his said charge to the jury.

The evidence is not incorporated as it is unnecessary to an understanding of the decision of the Court.

Certain exceptions were filed to proceedings had subsequent to the trial by Messrs. S. and A. P. Collins, based upon facts which the Court refused to certify, and are, therefore, omitted.

The motion for a new trial was overruled, and plaintiffs in error excepted and assign said ruling as error.

R. F. LYON; E. F. BEST, for plaintiffs in error.

T. J. SIMMONS; A. O. BACON, for defendant.

MONTGOMERY, Judge.

1. Section 1789 of the Revised Code announces that a father is bound to support his illegitimate child. If he voluntarily make a contract for its support, the obligation is a sufficient consideration to sustain it, and no doubt it may be so made as to bind his representatives. The law, however, does not extend the obligation to the latter, in the absence of any such contract. A mere statement by the father of his in-

tention that the child is to be supported out of his estate after his death, does not amount to such a contract. If the father fail to support the child voluntarily, the law points out the mode by which he may be compelled to enter into a contract for its support: Code, 4664, *et seq.* The mode here provided necessarily contemplates proceedings against *him* (not against his representatives) by the officials whose duty it is to see that the child does not become chargeable to the county. The law nowhere provides for a suit in behalf of the bastard for such support, either against the father or his representatives, not founded on some contract. A husband is bound to support his wife: Code, 1747; a father, his legitimate child: Code, 1783. It has never been contended that the enunciation of these principles in the Code gave the wife or child the right to enforce the obligation by suit. Section 1789 of the Code gives no right not in existence before its adoption. The section is but the embodiment of the legal principle applicable to such cases, and which had, therefore, been of force.

2. The heirs of the putative father in this case having made and delivered to the bastard a deed of all their interest in a piece of realty held by the ancestor in his lifetime, in common with another, of course their interest, and no more, passed by the conveyance, and entitles the grantee to a partition as between herself and the other tenant in common.

3. But the administrator has no power to bind the estate by promising to extinguish the title of the other tenant in common for the benefit of the bastard. The obligation to support the bastard, as already shown, is a valid consideration to support a contract made by the father for that purpose. It will not support the promise of his administrator to do so.

4. An escrow, *ex vi termini*, is a deed delivered to some third person, to be by him delivered to the grantee upon performance of some precedent condition by the grantee or another, or the happening of some event. If delivered to the grantee, or his agent, the delivery is complete, and the paper is not an escrow: *Jordan vs. Pollock*, 14 *Georgia*, 145; *Wellborn vs. Weaver*, 17 *Georgia*, 374; Code, 2651. It follows, that the

delivery of the deed to Messrs. Simmons & Bacon, the attorneys of the bastard, carried the complete title in the property granted to the grantee divested of all parol conditions.

5. On the hearing before this Court, the counsel for the administrator objected to the verdict and decree, upon the ground that the record showed that the administrator, the substantial defendant in the case, was not a resident of Bibb county, in which the action is brought, but of Houston, and should have been sued in the latter county. This objection was not made in the Court below, and this Court, being a Court for the correction of errors only, cannot now entertain it.

Judgment affirmed, with the following direction : That so much of said decree as requires C. C. Duncan, as administrator of J. S. Pope, to pay to William Bishop, next friend of Sallie Pope, the sum of $800 00, be set aside, and that on the decree of the jury, judgment be entered up that the sheriff sell said land for partition, and that two-sevenths of the proceeds of such sale be paid to the defendants, Collins, and the remaining five-sevenths to such person as the Court may appoint as trustee for Sallie Pope, and that C. C. Duncan, as administrator as aforesaid, pay to said S. and A. P. Collins the sum of $227 85 for rent of said two-sevenths of said property from the 1st day of August, 1866, to February 1st, 1872.