## GRAVES v. RIVERS.

1. A petition which alleges the ability of the parties to contract marriage, the mutual promises to marry and their terms, and the defendant's breach sufficiently states a cause of action for breach of promise of marriage.
2. Seduction of the plaintiff by the defendant subsequently to the promise to marry and pending the engagement may be alleged and proved in aggravation of the damages.
3. The damages recoverable in this form of action may include full compensation for the pain, mortification, and wounded feelings of the plaintiff, and in these matters the amount of recovery must be left to the enlightened conscience of impartial jurors.
4. Neither party to an action for breach of promise of marriage is a competent witness.
5. A charge to the effect that the plaintiff may recover on proof of the contract of marriage and its breach by the defendant is open to the criticism that it excludes the defense of a justifiable refusal to consummate the promise to marry.

Argued May 18, — Decided June 14, 1905.

Action for damages. Before Judge Hollingsworth. City court of Fayetteville. October 29, 1904.

Sallie Rivers sued out an attachment against J. M. Graves, on the grounds, that the defendant "absconds, also that he conceals himself, and also that he is about to remove beyond the limits of the county." The attachment was sued out before the judge of the city court of Fayetteville, and made returnable to the October term, 1903, of that court. The attachment was levied upon certain property of the defendant. Before the re-

turn term the plaintiff filed her declaration in attachment, alleging as follows: 1st: That the petitioner had endamaged her in the sum of $10,000. 2: That the defendant began visiting petitioner about six years ago, petitioner then being a young lady about eighteen years of age, and the defendant being a young man about twenty years old; that the defendant continued to visit her from that time "constantly" until about July 15, 1903 "coming to see petitioner quite often, once or twice each month." 3d: that the defendant professed to love her, and by his constant visits and attentions and professions of love he led her to believe him and to love and admire him, and as a result of such courtship they were engaged to be married, which engagement continued until the summer of 1901, when, on account of some trouble that it was alleged the defendant was in, petitioner's father and mother objected to the visits of the defendant, and the engagement was broken; that defendant did not visit petitioner for several months, but after the lapse of this time the defendant, "to ingratiate himself again into the affections of petitioner and her people," protested his innocence of the charges and rumors that had been made against him, and obtained once more the good will of petitioner's parents and of herself; as a result of which they were again engaged to be married, which engagement has never been broken off by petitioner." 4th: that the defendant and petitioner were to have been married "last Christmas, both having agreed to said time," but for some reason the defendant had put the time off for some months, claiming not to be ready, and when the time arrived again he made other excuses, and finally quit visiting petitioner at all, "and has broken his solemn engagement with petitioner." 5th: that during the continuance of the engagement, the defendant all the time promising to marry petitioner, he, by persuasions and manifestations of love and affection for her, and by other false and fraudulent means, induced her to have intercourse with him "during the fall and winter of last year and at Christmas, and again in January of this year," as a result of which petitioner became pregnant and gave birth to a child on September 11, 1903, which child is now living and is the child of the defendant. 6th: that up to the time she was seduced by the defendant petitioner had lived a moral and virtuous life, had a happy

and good home, and moved in the best society; but through the baseness of defendant's conduct her happiness in life has been blighted and ruined, her social standing and bright prospects have been totally destroyed, and henceforth she will be a social outcast because of the illegal and fraudulent representations of the defendant. 7th: that she had implicit faith and confidence in the defendant and believed that he was sincere; that she loved him and acted in perfect good faith; but that all the promises and representations made by the defendant to her were false and fraudulent, and made to deceive her and to destroy her chastity and happiness, and that although she has tried to get him to right the wrong done her, he fails and refuses so to do. (The 8th paragraph was stricken on demurrer.) 9th: that as a result of the intercourse of the defendant with her she has become unwell and sick in bed a good deal of the time since January " of this year;" that about one month before the birth of her child she had to take her bed, and has since, and will be for some time to come, suffering great pain and agony, both in body and in mind; that she now has the child to look after and support without the assistance of the defendant; that she will continue to suffer in body, and especially in mind, all the remainder of her natural life, all on account of the unconscionable conduct of the defendant. 10th: that on September 18, 1903, she sued out before W. B. Hollingsworth, judge of the city court of Fayetteville, an attachment against the defendant, returnable to the October term, 1903, of that court, which attachment was levied by the sheriff of Fayette county on property therein described. The 11th paragraph contains a prayer for a judgment of $10,000, and a special judgment against the property upon which the attachment was levied, and "that she have a general judgment." There was an entry of service of this declaration by leaving a copy at the defendant's most notorious place of abode.

At the October term, 1903, of the city court of Fayetteville, the case was called for trial; and the defendant moved to dismiss the suit, first, because no cause of action was set forth, and secondly, because the petition showed on its face that it was an action for seduction and that the plaintiff had no right to sue for her own seduction. The court overruled the motion to dismiss; whereupon the plaintiff offered to amend the petition by

adding, after the word "facts" in the first line of paragraph 11, the following: "and the breach of said contract for marriage, for which petitioner sues." Upon the allowance of this amendment the defendant demurred generally, that there was no cause of action set out in the petition; and that the action was barred by the statute of limitations; and demurred specially to all the allegations as to seduction, because such allegations were irrelevant and the seduction was not alleged as being subsequent to the promise of marriage; that the damages alleged in the 9th paragraph were not recoverable; that the attachment affidavit and bond were insufficient in law, and because the court issuing the attachment was without authority to do so. He demurred also to the eighth paragraph. The court overruled the demurrers, both general and special, except to the 8th paragraph, and as to this paragraph the demurrer was sustained. The trial resulted in a verdict for the plaintiff in the sum of $10,000. The defendant made a motion for a new trial, which was overruled, and he excepted to the judgment overruling the motion to dismiss and the demurrers, and the refusal of a new trial.

*A. O. Blalock* and *J. F. Golightly*, for plaintiff in error.
*J. W. Wise*, contra.

EVANS, J. (After stating the facts.) 1–3. An action to recover damages for a breach of promise to marry is predicated on the contract and its breach. All that is necessary to be alleged in the petition is the promises to marry and their terms, and the defendant's breach. Where special damages are not claimed, these averments comprise all the issuable facts. 5 Cyc. 1007. The facts related in the petition begin with a courtship six years before the bringing of the suit, and the narrative proceeds with a description of the first engagement, how and why it was broken off, when it was renewed, the time the marriage was to be consummated, the wiles of the defendant to secure postponement of the nuptials, and his refusal to marry the plaintiff. Many of the averments in the petition might be treated as surplusage, but the essential elements of the form of action are alleged. The mutual promises to marry, the final agreement that the marriage contract was to have been on Christmas preceding the filing of the suit, the readiness of the plaintiff to marry at that time, the refusal of the defendant to comply with

his contract, and his final abandonment of his attentions are alleged with sufficient definiteness to set out a cause of action. Defendant demurred to the petition, on the ground that the cause of action was barred by the statute of limitations. It is not pointed out what limitation period is applicable. As the suit sounds in contract and is brought within a year from the alleged breach of the contract, we can not perceive how the plaintiff can be barred. The special demurrers to the paragraphs of the petition which allege seduction as an aggravating element of damages are without merit. The seduction is alleged to have been subsequent to the promise to marry and pending the engagement to marry. The seduction of the plaintiff under promise of marriage may be alleged and proved in aggravation of damages. 3 Enc. Pl. & Pr. 688, and cases cited. Although the form of action is *ex contractu,* yet the measure of damages, in a case where the plaintiff is entitled to recover, may include full compensation for the pain, mortification, and wounded feelings suffered by her in consequence of the dishonorable conduct of the defendant; and the amount of the recovery must be left to the enlightened conscience of impartial jurors. *Parker* v. *Forehand,* 99 *Ga.* 743. One of the special demurrers challenged the sufficiency of the attachment affidavit and bond and the authority of the court to issue the attachment. The demurrer did not specify any particular defect, and as the grounds of the affidavit were statutory and sufficiently alleged (*Kennon* v. *Evans,* 36 *Ga.* 89), and both affidavit and bond were prepared after the code forms (Civil Code, § 4529), we can not see any irregularity in either. The affidavit for attachment was made before the judge of the city court of Fayetteville, and the writ of attachment was issued by him. The attachment was returnable to the city court of Fayetteville, and the judge thereof had jurisdiction to issue it. (Acts 1902, p. 126.) Hence we conclude that the court did not err in overruling all demurrers except the special demurrer to the eighth paragraph, which was sustained.

4. Six grounds of the amended motion for a new trial complain in various ways that the plaintiff was permitted to testify over the defendant's objection. The plaintiff was an incompetent witness, and the court erred in holding that she was competent. At common law a party to a suit, interested in the result

of the trial, was disqualified from testifying, because of his interest. The evidence act of 1866 permitted certain persons to testify notwithstanding their interest, but in express terms the ban of disqualification was left on parties to an action for breach of promise of marriage. Civil Code, § 5272. The evidence act of 1889 (Civil Code, § 5269) superseded only one clause of the act of 1866, but there is nothing in that act which removes the incompetency of those persons disqualified by the other clauses of the act of 1866. Section 5272 explicitly and positively declares that nothing contained in section 5269 shall apply to any action for breach of promise of marriage. While in England and in many of the States the common-law rule of exclusion in this class of cases has been relaxed so as to allow the parties to testify, with the qualification that their testimony must be corroborated, in this State a party is absolutely excluded as a witness.

Where the party is denied the right to testify, resort is usually had to circumstantial evidence to prove or disprove the complaint. Since commonly marriage proposals and their acceptance do not transpire in public or in writing, they must be established by the observed conduct of the parties or their admissions. "When marriageable persons conduct toward each other as engaged persons commonly do, and as those who are not engaged do not, the reasonable and fair inference is that they are in fact what they thus hold themselves out to be, engaged: and in a breach of promise suit the jury is justifiable in so finding." Bish. Mar. & Div. § 197. Likewise any other material issue in the case may be supported by proof of various circumstances which point to the existence of the fact sought to be established.

5. Exception is taken to the following charge of the court: "I charge you that if you believe from the evidence that J. M. Graves, the defendant, did contract marriage with the plaintiff, then the breach thereof would make the defendant liable, that is if he failed to carry out this contract." This charge is open to the objection that under it the plaintiff would be entitled to recover for any breach of the contract, although the defendant may have been legally justifiable in refusing to carry out his promise to marry; and the exception is well taken.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*