15353.   SPENCE *et al.,* administrators, *v.* CARTER.

An action for breach of promise of marriage may be brought immediately upon the promisor's renunciation of the contract.

Time or place of performance need not be stated in such a contract. A reasonable time will be implied, if no time is stated; and the place of residence of the prospective bride is prima facie, by the custom of society, the place of performance, if no place is stated.

A promise to marry is not an "agreement made upon consideration of marriage," within the statute of frauds; nor is it within the provision requiring agreements which are not to be performed within a year to be in writing.

A cause of action for breach of promise does not survive the death of the promisor, where no special or property damage resulted from the breach. The first count of the petition in this case, claiming only unliquidated damages because of breach of promise to marry, and based solely on that contract, was subject to demurrer on the ground that the cause of action abated on the death of the promisor.

A cause of action was stated in the second count, which alleged an agreement upon a settlement, in the sum of $50,000, for damages for the breach of promise. A promise to pay a fixed sum of money within a reasonable time, made upon a valuable consideration, being an ordinary

claim ex contractu, survives the death of the promisor, and may be enforced against his administrator or executor.

DECIDED DECEMBER 17, 1924.

Action for damages; from Walton superior court—Judge Fortson. December 12, 1923.

*Orrin Roberts, S. Holderness,* for plaintiffs in error.

*A. C. Stone, J. M. Johnson,* contra.

JENKINS, P. J.  1.  An action lies in this State for the breach of a promise of marriage, independently of statute, by the common law here recognized.  *Parker* v. *Forehand,* 99 *Ga.* 743 (1) (28 S. E. 400).  Upon the absolute renunciation of such a contract by the promisor, the plaintiff is not obliged to wait until the time for performance has arrived before bringing suit, but may treat the contract as broken by the defendant and bring suit at once.  *Anderson* v. *Kirby,* 125 *Ga.* 62, 66 (54 S. E. 197, 114 Am. St. Rep. 185, 5 Ann. Cas. 103).

2.  It is not essential that the time for the performance of a contract of marriage be stated, for in the absence of such a statement the law will imply that it shall be performed within a reasonable time.  4 R. C. L. 147, § 5; 9 C. J. 330, § 19, E.  Nor is it necessary that the place of such performance shall be stated, for if no place be fixed, the contract, being transitory in its nature, may be performed anywhere, according to the maxim debitum et contractus sunt nullius locit, the house of the prospective bride being prima facie, by the custom of society, the place contemplated for the marriage.  4 R. C. L. 148, § 6; 9 C. J., § 20.

(a)  A promise to marry is not a contract or "agreement made upon consideration of marriage," within the meaning of the statute of frauds (Civil Code of 1910, § 3222 (3)); and hence it is not, under that provision, necessary that the contract should be in writing.  4 R. C. L. 151, § 9.  Nor, by the weight of authority, is it a contract within the provision of the statute of frauds requiring agreements not to be performed within a year to be in writing.  Any contract to marry may possibly be performed within a year, and even "where the terms of the contract are such that it may or may not be performed within a year, a writing is, under either view of the statute, unnecessary."  4 R. C. L. 151, § 9; 9 C. J. 327, 328, § 13 (4).  While the counts in the instant petition fail to allege at what time the contract was to be performed, the law presuming a

reasonable time, such as might have occurred within one year, under any view of the contract with reference to the statute of frauds, the contract did not fall within the purview of the statute.

(*b*)   Whether the ruling in *Harris* v. *Tison*, 63 *Ga.* 629 (36 Am. Rep. 126), that "an action for breach of promise to marry is personal, and dying with the person it does not survive after death of plaintiff," be treated as obiter (since that case did not actually involve the question as to the effect of death, but dealt with the effect of the marriage of the parties after the breach), it is nevertheless the rule, under the weight of general authority, that neither a cause of action nor an action based on such cause survives the death of either the promisor or the promisee, unless a statute exists in the particular jurisdiction which prevents such abatement (Johnson *v.* Levy, 118 La. 447, 43 So. 46, 9 L. R. A. (N. S.) 1020, 118 Am. St. Rep. 378, 10 Ann. Cas. 722, relied upon by plaintiff in the court below), or unless, in certain instances, special damage results to the promisee, as where a remunerative situation was given up because of the promise.   1 C. J. 183, § 333 (h) ; 4 R. C. L. 154, 155, § 13; 1 R. C. L. 41, 42, § 39.   The reason for such abatement at common law is not that the action is not one ex contractu, as distinguished from tort, but that the injury is one purely personal, in which the representative of the estate has no interest.   1 R. C. L. 41, 42, § 39.

(*c*)   Thus, general statutes providing that a personal representative may sue or be sued on contracts of or with the deceased do not apply to actions for breach of promise of marriage (1 R. C. L. 42) ; and even where suit has been instituted before the death of the promisor, section 5617 of the Georgia Code (1910), which provides that "no suit shall abate by the death of either party, where such cause of action will in any case survive to or against the legal representatives of the deceased party, either in the same or any other form of action," can not, therefore, be construed as inclusive of contracts of this character; nor can section 4421, which refers only to torts, be so construed.

(*d*)   Where, as has been above indicated, an exception to the general rule of survival has been recognized in the event of special damage resulting to the promisee from the breach, the allegation of special damage must be of damage to property, and not merely to the person or character, and such as would of itself be sufficient to sustain the suit.   1 C. J. 183.   Even in cases of actions

ex delicto which recognize injury or benefit to the estates of the parties as an exception to the general common-law rule, it has been generally held essential that the executor or administrator of the tort-feasor "should, by the wrongful act, have acquired specific property by which, or by the proceeds of which, the assets in the hands of his personal representatives were increased." It was not enough that benefit resulted or that expense was saved to the tort-feasor, by which his estate was larger than it otherwise would have been. 1 C. J. 185, § 340. The exception in the case of torts as recognized in this State by section 4421 of the Civil Code (1910), that "no action for a tort shall abate by the death of either party where the wrongdoer received any benefit from the tort complained of," has been held inapplicable to *causes of action,* and exists only in cases where the action has been brought before the death of the tort-feasor, in which event the *action* survives against his personal representatives. *Smith* v. *Jones,* 138 *Ga.* 716 (76 S. E. 40) ; *Alexander* v. *Dean,* 157 *Ga.* 280 (121 S. E. 238) ; s. c. 29 *Ga. App.* 722 (116 S. E. 643). See also, in this connection, *Woods* v. *Howell,* 17 *Ga.* 495 (1) ; *Ellington* v. *Bennett,* 56 *Ga.* 159 (1) ; *Swift Specific Co.* v. *Davis,* 76 *Ga.* 787 (2), 789 (2), which in effect hold that, although such *actions,* brought against a tort-feasor, do not abate as against his personal representatives where the defendant has received benefit from the tort, the benefit to the wrongdoer or his estate should be one flowing immediately from the tort.   Breach of promise, although based upon contract, as to the measure of damages "has always been classed with actions of torts, as libel, slander, seduction, criminal conversation, etc.," but "the damages are not to be measured by the wealth or poverty of the defendant, though his wealth and rank may be pertinent to the issue as showing the injury sustained by the loss of marriage." *Parker* v. *Forehand,* 99 *Ga.* 743, 746 (28 S. E. 400). Assuming, without deciding, that the exception to the general rule as to the abatement of causes of action in breach of promise, recognized where the promisee has suffered special injury, may exist in this State, yet since in the instant case suit was brought after the death of the promisor, and since the allegations of the petition, that plaintiff had looked forward "to living as the honored and respected wife" of the promisor, "and receiving the attention, social prominence, and worldly comforts such as his wife

would receive," and that the promisor "died leaving an estate worth $250,000, that he owed practically no debts except funeral expenses, which have all been paid," fail to show any special or property damages flowing immediately from the breach, the averments do not fall within such an exception. Nor does the claim of $50,000 damages as set forth in the petition otherwise include any item or element expressly claimed as special damage.

(e) For the reasons set forth above, the first count of the petition, claiming only unliquidated damages because of the breach of a contract to marry, and based solely on that contract, was subject to that ground of the general demurrer which set up the abatement of the cause of action by the promisor's death.

3. The amended second count in this case, after reciting as inducement the alleged breach of promise by the intestate promisor to contract marriage, alleges that the plaintiff thereupon insisted "that she was entitled to large damages for the breach of said promise, and demanded of the said" promisor "that he make settlement with her for such damages and for the wrong and injury done her in the premises;" that thereupon the promisor "admitted a willingness to come to a settlement with petitioner and pay her such damages; and it was then and there agreed by petitioner and the said" promisor that he "would pay her the sum of $50,000 as damages within a reasonable time thereafter, which said sum the said" promisor "then and there agreed to be reasonable and which sum was then and there *fixed, liquidated, and agreed upon* as damages to be paid by the said" promisor, "which said agreement, liquidation of damages, and promise to pay on the part of" promisor, "plaintiff then and there *accepted and brings this* suit thereon."

(a) "Accord and satisfaction is where the parties, by a subsequent agreement, have satisfied the former one, and the latter agreement has been executed." Civil Code (1910), § 4326. Such an agreement, like all other contracts, must be founded upon a valid consideration. Where the amount of the claim is unliquidated, the mere adjudication of such a bona fide dispute by the express terms of a new agreement will of itself afford sufficient consideration; but in such a case, in the absence of actual performance, the new promise, in order to stand as such and to extinguish the original claim, must have been expressly accepted in satisfaction.

Civil Code (1910), § 4326; *Thompson* v. *Mallory,* 104 *Ga.* 684, 686 (30 S. E. 887); *Fouché* v. *Morris,* 112 *Ga.* 143 (1) (37. S. E. 182); *Brunswick & Western Ry. Co.* v. *Clem,* 80 *Ga.* 534 (7 S. E. 84); *Molyneaux* v. *Collier,* 13 *Ga.* 406 (11, 12), 422, 423; *Riley* v. *London Guaranty Co.,* 27 *Ga. App.* 686 (1 *a*) (109 S. E. 676).

(*b*) It seems to be a general rule of pleading, under the authorities in other jurisdictions, that "counts on the original claim and on a compromise and settlement thereof are inconsistent," and that a plaintiff who after suing upon an original contract adds to his declaration a count claiming the amount agreed upon in a settlement and compromise may be held bound by his first election, "since he can not take two inconsistent positions." 12 C. J. 361, § 69; *Sullivan* v. *Boswell,* 122 Md. 539 (89 Atl. 940). It would not seem, however, that such a rule would be of force in this State, in a case such as that stated, under the ruling in *So. Ry. Co.* v. *Chambers,* 126 *Ga.* 404 (5), 410 (55 S. E. 37, 7 L. R. A. 926), that "when a petition contains two or more counts and each sets forth a separate and distinct cause of action, the plaintiff will not be required to elect upon which count he will proceed," and that "the law allows a plaintiff to embrace in one petition as many causes of action as he sees proper, provided that they are all of the same character, that is, all sound in tort or all sound in contract," the rule as to inconsistency applying only to cases where the pleader seeks to embody more than one cause of action in a single count. *McMillan* v. *Heard Nat. Bank,* 19 *Ga. App.* 148, 151 (91 S. E. 235). Moreover, in any event it would be necessary for the defendant to point out any such alleged defect by proper special demurrer. *Central of Ga. Ry. Co.* v. *Banks,* 128 *Ga.* 785 (1) (58 S. E. 352); *Willingham* v. *Glover,* 28 *Ga. App.* 395 (1 *a*) (111 S. E. 206). There being no demurrer based upon such a ground in the instant case, any such alleged defect and inconsistency, suggested in the brief of counsel, can not be considered.

(*c*) A promise to pay a fixed sum of money within a reasonable time, made upon a valuable consideration, being an ordinary claim ex contractu, survives the death of the promisor, and may be enforced against his executor or administrator. Civil Code (1910), § 5617; *Neal* v. *Haygood,* 1 *Ga.* 514, 515; 1 R. C. L. 28; 1 C. J. 174, 181, 182, § 326 (footnote 77 a), §§ 330, 331.

4. Under the rules stated in the preceding divisions of the syllabus, the second count of the petition set forth a cause of action, surviving the death of the promisor; but for the reasons stated in the first and second divisions of the syllabus, the demurrer to the first count should have been sustained.

*Affirmed in part and reversed in part. Stephens and Bell, JJ., concur.*