## 35605. THORPE v. COLLINS et al.

UNDERCOFLER, Presiding Justice.

This case presents two questions: one is whether there exists a cause of action in tort for fraud and deceit independent of an action for breach of promise to marry; the other, whether promises made by the putative father to the mother of their illegitimate child to settle an estate on her may be enforced by the child as a third party beneficiary.

Beulah Collins met George Thorpe at a carwash near Lenox Square in October, 1975. When the washing apparatus temporarily broke down, they began, at a nearby hotel, a relationship which lasted over three years. During this time, Thorpe saw Collins almost daily and according to her, promised to marry her; first, as soon as he divorced his wife; then, asserting his wife was terminally ill, as soon as she died and he retired as president, or later, chairman of his company.

Collins also claims that Thorpe insisted he wanted a second family, and, as a result, she became pregnant twice. The first pregnancy was terminated by an abortion due to RH problems. The second resulted in the birth of a baby girl, who is named after him and whose birth certificate he signed. Collins asserts that Thorpe, both pending and after the child's birth, promised to legitimate her and also represented that he had done so. In addition, he allegedly promised to buy a home in the child's name and set up a trust and include the child in his will equally

with his three legitimate children. Shortly after the birth of the child, however, his interest apparently cooled and he stopped seeing Collins and the child.

She then sued seeking to enforce these promises individually, in a damage action for fraud, and later, on a motion to intervene as next friend for the child, in a suit for specific performance of the promises benefiting the child.[1] Thorpe's motions for summary judgment on both actions were denied by the trial court and he appealed. We granted interlocutory review. (Collins had amended to add counts for invasion of privacy and infliction of mental distress which are still pending below.)

1. Breach of promise to marry is a common law contract action which, although not codified, is apparently recognized in Georgia. *Parker v. Forehand,* 99 Ga. 743 (28 SE 400) (1896). Accord, *Anderson v. Kirby,* 125 Ga. 62 (54 SE 197) (1906); *Graves v. Rivers,* 123 Ga. 224 (51 SE 318) (1905); *Harris v. Tison,* 63 Ga. 629 (1879); *Leonard v. Owen,* 125 Ga. App. 5 (2) (186 SE2d 506) (1971); *Brown v. Douglas,* 104 Ga. App. 769 (122 SE2d 747) (1961); *Morris v. Stanford,* 58 Ga. App. 726 (199 SE 773) (1938); 53 Ga. App. 722 (187 SE 159) (1936); *Spence v. Carter,* 33 Ga. App. 279 (125 SE 883) (1924). A promise to marry, however, is invalid if the promisee knows or should know that the promisor is already married, as the courts will not enforce a contract contravening the public policy of this state favoring stability in marriage. *Leonard v. Owen,* supra. Therefore, a promise contingent on the divorce or death of a *known spouse* is not enforceable in the courts of this state. 11 CJS 771, Breach of Marriage Promise, § 2 (f).

It is clear that Beulah Collins does not have a cause of action for breach of promise to marry. Both parties admit that the fact of George Thorpe's existing marriage was known within several minutes of their first meeting.

Collins urges, however, that she brings this action independent of the promise to marry on a tort theory for the fraud and deceit practiced upon her by Thorpe. She claims he, with the intent to deceive her, falsely

---

[1]She apparently has abandoned the claim for the house.

represented his love and desire to marry her, that his wife was an alcoholic with severe health problems which would soon be fatal, leaving him free to marry her as soon as he retired from the presidency of National Data Corporation, and that he had already legitimated their child and would consider her as his daughter in buying a home in her name and in treating her equally with his other three children by including her in his will and in his children's trust. In reliance on these misrepresentations, Collins alleges that she gave up her business as a broker in real estate, dated no one else, attempted no birth control, underwent an abortion, and gave birth to his child.

Collins cites in support of her claim for fraud, *Perthus v. Paul,* 81 Ga. App. 133 (58 SE2d 190) (1950), where such a cause of action was recognized. We find this case distinguishable. In *Perthus,* the plaintiff-man was entreated by the defendant-woman to leave his home and employment in Boston to marry her in Georgia. He acquiesced on her misrepresentation that she was divorced. Although a breach of promise suit is not maintainable where the promisee knows the promisor is not free to marry, the same is not so where this fact is bona fide unknown. *Leonard v. Owen,* supra. The plaintiff-man in the *Perthus* case, though he did not assert it because of choice of law problems, in fact had a claim for breach of promise. Thus damages were assessable for the fraud practiced upon him by the defendant-woman's false representation that she was already divorced.

On the contrary, Beulah Collins, in the case now before us, has no claim for breach of promise to marry since it is undisputed that she knew from the beginning of their relationship that George Thorpe was married. Therefore, we conclude that she also has no claim in fraud and deceit cognizable by the courts under the public policy of this state. She may not in tort gain access to the courts where she may not in contract. To hold otherwise would be to undermine long-established public policy. This we refuse to do. The trial court erred in denying Thorpe's motion for summary judgment on Collins' individual claim for fraud. We reverse the trial court on this issue.

2. The second and third enumerations of error raise the question whether the child, as a third party

beneficiary, can enforce a contract between the mother and father that the father will treat the child in a trust and in a will equally with the father's legitimate children. The trial court denied summary judgment in favor of the father. We agree and affirm on this issue. See Annot. 20 ALR3d 500 (1968).

Although under the common law an illegitimate child was the legal responsibility only of its mother, the Code of Georgia also makes the father responsible for its support. Code Ann. § 74-202.[2] This right may be enforced at law by an abandonment proceeding. Ga. L. 1973, p. 697, enacting Code Ann. Ch. 74-99 and repealing Code Ann. Ch. 74-3.[3] *Thornton v. State,* 129 Ga. App. 574 (200 SE2d 298) (1973). The father may also assume the duty to support his children by voluntary contract, although without such a contract the statutory abandonment proceeding appears to be the only remedy to obtain such support. *Y. v. S.,* 224 Ga. 352 (162 SE2d 321) (1965); *Duncan v. Pope,* 47 Ga. 445 (1872); *Washington v. Martin,* 75 Ga. App. 466 (43 SE2d 590) (1947).

---

[2]"Until majority it is the joint and several duty of each parent of an illegitimate child to provide for the maintenance, protection, and education of the child." Ga. L. 1979, pp. 466, 494 (eff. April 4, 1979). Prior to this amendment the Act provided: "The father of an illegitimate child shall be bound to maintain him until said child reaches the age of 18, marries, or becomes self-supporting, whichever occurs first. This obligation shall be good consideration to support a contract by him..." Ga. L. 1972, pp. 494, 495.

[3]Insofar as Code Ann. § 74-9902 provides that "[t]he accused father and the mother of the illegitimate child may enter into a written agreement providing for future support of the child by regular periodic payments to the mother until such child reaches age 18 years, marries, or becomes self-supporting, provided, however, such agreement shall not be binding on either party *until it has been approved by the court having jurisdiction* to try pending [sic] cause," (emphasis supplied), we construe this proviso to apply only in proceedings under this

Thorpe argues, however, that such a contract is void for lack of adequate consideration. It has long been the Georgia law that paternity itself, as well as the moral obligation recognized by this statute, is sufficient consideration to render a contract for the child's support enforceable. E.g., *Jones v. Peterson,* 117 Ga. 58 (43 SE 417) (1902); *Duncan v. Pope,* supra; *Burdsall v. Yount,* 141 Ga. App. 396 (233 SE2d 489) (1977); *Warner v. Burke,* 137 Ga. App. 185 (223 SE2d 234) (1976); *Gray v. Plummer,* 87 Ga. App. 331 (73 SE2d 569) (1952); *Sybilla v. Connally,* 66 Ga. App. 678 (18 SE2d 783) (1942); *Gresham v. Hewatt,* 2 Ga. App. 71 (58 SE 309) (1907). As was said long ago by the first Justice Lumpkin, in *Hargroves v. Freeman,* 12 Ga. 342, 349 (1852): "I assume this to be an incontrovertible position, that whatever doubts may exist, as to the sufficiency of a mere moral obligation, there can be none that a legal obligation is always a sufficient consideration to support a promise. By the laws of this State, the father of a bastard child is bound for its maintenance and education . . .

" . . . And in the language of Justice *Bathurst* — 'Where a man is bound in honor and conscience,' and I will add, in law, too, 'God forbid that a Court of Law should say the contrary.'

"Such a contract, is not against good policy, or good morals, nor against law, but in conformity with its express provisions, and in the judgment of this Court, ought to be enforced." See 1A Corbin on Contracts 345, § 231.[4] It is also clear that continued acts of cohabitation between the father and mother, which are not part of the consideration for the contract, do not render the contract void. *Smith v. DuBose,* 78 Ga. 413 (3 SE 309) (1887). Compare *Colson v. Huber,* 74 Ga. App. 339 (39 SE2d 539) (1946), where the consideration included a continuing relationship between the tenant-mother and landlord-father in exchange for rent.

---

section.

[4]Such contracts may be oral, *Warner v. Burke,* 137 Ga. App. 185 (223 SE2d 234) (1976), and do not come under the Statute of Frauds, *Francis v. Barnwell,* 25 Ga. App. 798

Thorpe also relies on *Colson v. Huber*, supra, to support his claim that the contract is void as against public policy because he is married. We do not agree. In *Colson*, the mother of the purportedly illegitimate children was married to another when the children were born. Since other public policy considerations, the presumption of legitimacy, for example, are involved where it is the mother who is married, we leave the question of the effect of the mother's marriage on the validity of the contract for another day. Compare Franklin v. Congelosi, 6 Conn. Cir. 357 (273 A2d 291) (1970). Here, it is evident that Beulah Collins is divorced and that it is George Thorpe who is married, and *Colson*, supra, is therefore distinguishable. There are many physical precedents for enforcing such contracts where the man is married. E.g.: *Hays v. McFarlan*, 32 Ga. 699 (1861); *Gray v. Plummer*, supra; *Sybilla v. Connally*, supra.

We also must conclude, contrary to Thorpe's assertions, that contracts to create a trust or will in favor of an illegitimate are also enforceable.[5] *Smith v. DuBose*, supra; *Jackson v. Finney*, 33 Ga. 512 (1863); *Sybilla v. Connally*, supra. In the latter case, the father promised the illegitimate child's mother that he would treat the child equally with any legitimate children he may have. He later married, but never had any legitimate children. The court held the contract action, seeking an award of one-half of the estate for the child and one-half to the widow, was not subject to demurrer. Compare *Duncan v. Pope*, supra.

In another enumeration of error Thorpe raises the appropriateness of granting the motion to intervene[6] by Beulah Collins as next friend for her child. He relies on *Franklin v. Ford*, 13 Ga. App. 469 (79 SE 366) (1913), holding that suit on a contract for the support of a child

---

(105 SE 165) (1920).

[5]We here do not reach the questions as to definiteness raised by Thorpe since these issues have not yet been ruled on by the trial court.

[6]When an interlocutory appeal is granted, all antecedent rulings may be raised at that time.

must be brought by the mother. Accord, *Sybilla v. Connally,* supra. Thus, he argues the trial court erred in allowing the intervention.

We again must disagree. These cases arose before the legislature amended Code Ann. § 3-108 to allow third party beneficiaries to sue in their own right. Ga. L. 1949, p. 455. Even before 1949, however, the courts recognized suits to enforce support contracts by the illegitimate children themselves. *Duncan v. Pope,* supra; *Hargrove v. Freeman,* supra; 4 Corbin on Contracts 76, § 782. For both of these reasons, therefore, we hold that the trial court correctly exercised its discretion in allowing intervention by the mother as next friend for her child.

The denial of summary judgment on the mother's claim is reversed; the denial of summary judgment on the child's is affirmed.

*Judgment affirmed in part; reversed in part. Nichols, C.J., Jordan, Hill and Marshall, JJ., and Judge Charles L. Weltner, concur. Bowles, J., concurs in the judgment only. Clarke, J., not participating.*

ARGUED NOVEMBER 20, 1979 — DECIDED JANUARY 3, 1980 — REHEARING DENIED JANUARY 23, 1980.

*Westmoreland, Hall, McGee, Warner & Oxford, P. Joseph McGee,* for appellant.
*Frank Love, Jr., Thomas D. Harper,* for appellees.